UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHUNSHENG ZHENG,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX, *et al*.,

Respondents.

Case No.   1:26-cv-03533 (EJD)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

Petitioner Chunseng ("Petitioner") was arrested by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), on April 22, 2026. He filed this petition for a writ of habeas corpus arguing that his detention without a pre-deprivation bond hearing violated his due process rights under the Fifth Amendment and violated the Immigration and Nationality Act ("INA"). *See* Dkt. No. 1 ("Pet."). Respondents filed an opposition to the Petition, Dkt. 6 ("Opp."), and Petitioner filed a reply, Dkt. 7 ("Reply"). For the reasons that follow, the Petition is GRANTED, and the Court orders Petitioner's immediate release.

I.       **BACKGROUND**

Petitioner entered the United States without inspection on September 16, 2023, and was subsequently apprehended by ICE. Pet. ¶ 13. Shortly thereafter, ICE released Petition from custody on his own recognizance pursuant to 8 U.S.C. § 1226 of the INA ("Section 1226"). *Id*. ¶ 14. That same day, DHS issued a Notice to Appear, charging Petitioner with removability under

Case No.: 1:26-cv-03533-EJD

1

INA § 212(a)(6)(A)(i) and placing Petitioner in removal proceedings. *Id*. ¶ 15. Following his release, Petitioner filed an application for asylum, has complied with all DHS reporting requirements, pays taxes, attends church, and has lived openly in the community. *Id*. ¶¶ 16–17. Based on the record before the Court, those removal proceedings appear to be ongoing, and no final order of removal has been issued.

Despite his prior release into the United States, on April 22, 2026, ICE re-detained Petitioner following a routine traffic stop. *Id*. ¶ 18. He is currently detained at Golden State Annex in McFarland, California.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

Petitioner asserts two claims for relief, including that his re-detention without a pre-deprivation hearing where the government must prove that he is a flight risk or dangerous violates the Due Process Clause of the Fifth Amendment (count 1), and that his warrantless arrest and the government's failure to provide him with a post-deprivation bond hearing violated the government's detention authority under 8 U.S.C § 1226 (count 2). Because Petitioner's Due

Case No.: 1:26-cv-03533-EJD

United States District Court
Eastern District of California

Process Clause claim (count 1) affords Petitioner all the relief to which he is entitled—namely, release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's second claim.

### A. The Mandatory Detention Scheme Under 8 U.S.C. § 1225(b) Does Not Apply to Petitioner.

Before turning to the Petitioner's due process claim, the Court notes that the parties dispute which statutory detention authority applies to Petitioner. Respondents argue that "Petitioner is an 'applicant for admission' who is subject to mandatory detention" pursuant to 8 U.S.C. § 1225 ("Section 1225"), and that his "encounter with law enforcement led to Petitioner's redetention." Opp. at 1. Petitioner, however, maintains that this statute only applies where the noncitizen is "seeking admission at the border or port of entry[,]" and not noncitizens like Petitioner who were "apprehended in the interior of the United States." Reply at 2.

Petitioner is correct for three reasons. First, while Section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). The record before the Court confirms that immigration authorities previously determined that Section 1226 applies to Petitioner when he was released on his own recognizance. Pet ¶ 15. Courts throughout this Circuit have similarly found that where a noncitizen has been previously released on his own recognizance, the government may not reverse course and re-detain the noncitizen under Section 1225. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025) (once the government "elect[s] to proceed ... under § 1226, [it] cannot [ ] reverse course and institute § 1225 ... proceedings."); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025); *Bautista Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, *2-3 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at * 8-9 (E.D. Cal. Nov.

United States District Court
Eastern District of California

12, 2025); *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at \*2 (S.D. Cal. Feb. 18, 2026).

Second, the text of Section 1225 makes clear that its detention scheme applies to all noncitizens who are "applicants for admission or otherwise *seeking admission* or readmission to or transit through the United States[.]" 8 U.S.C. § 1225(a)(3) (emphasis added). To seek means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. And the term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "To piece this together, the phrase seeking admission means that one must be actively seeking lawful entry" to, as opposed to seeking to remain in the United States as Petitioner is doing here. *Lepe v. Andrews*, 801 F. Supp. 3d 1113 (E.D. Cal. 2025) (internal quotations omitted). As an individual seeking to remain in the country, as opposed to seeking admission, Section 1225 does not apply to Petitioner.

Finally, Petitioner's "encounter with law enforcement" does not justify application of Section 1225. Respondents do not point to any portions of Section 1225, or case law, suggesting that an encounter with law enforcement justifies application of the statute. As such, the Court is not persuaded that an "encounter" with law enforcement somehow renders Section 1225 applicable here.

### B.  Detaining Petitioner Without Providing a Pre-Deprivation Hearing Violated His Due Process Rights.

Petitioner contends that his due process rights under the Fifth Amendment were violated when ICE re-detained him without a hearing. Pet. ¶ 34. Relying on *DHS v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020), Respondents argue that Petitioner's due process rights are coextensive with those prescribed by statute—specifically Section 1225. Opp. at 2. This argument, however, stretches the holding in *Thuraissigiam* and fails to consider other Supreme Court authority.

*Thuraissigiam* does not hold that noncitizens' due process rights are entirely prescribed by

Case No.: 1:26-cv-03533-EJD

United States District Court
Eastern District of California

statute, rather it considered whether a noncitizen stopped at the border had a due process right to challenge his *admissibility* into the United States. *See Thuraissigiam*, 591 U.S. at 107; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) (finding *Thuraissigian* inapplicable to the question of whether plaintiffs were entitled to bond hearings as *Thuraissigiam*'s holding was limited to "rights regarding admission"); *Baihua B v. Chestnut*, No. 1:26-CV-00438-KES-HBK (HC), 2026 WL 184512 (E.D. Cal. Jan. 23, 2026) (similar). Although *Thuraissigiam* did hold that applicants for admission at the "threshold of initial entry" cannot claim any greater rights under the Due Process Clause than what is afforded by statute, the Supreme Court contrasted the petitioner in that case, who was apprehended only 25 yards from the border, to noncitizens like Petitioner, "who . . . [have] due process rights in deportation proceedings" because of their "established connections in this country." *Thuraissigiam*, 591 U.S. at 107.

The Supreme Court has previously noted the distinction "between those aliens who have come to our shores seeking admission [like the petitioner in *Thuraissigian*] … and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). As Petitioner has lived in the United States at liberty for almost three years, and is not at the threshold of initial entry, his due process rights go beyond those prescribed by statute.

### C.   Procedural Due Process

The Court next analyzes Petitioner's due process claim. Petitioner's constitutional

Case No.: 1:26-cv-03533-EJD

challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Protected Liberty Interest

Petitioner argues that his release from immigration custody by the affirmative act of the Government pursuant to 8 U.S.C. § 1226, and then the nearly three years of freedom that followed, gave rise to a protected liberty interest. *See* Pet. ¶¶ 34–35. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh*, 2026 WL 468159, at * 2 (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him into the United States roughly three years ago. Petitioner maintains that he was released on his own recognizance, and the government does not dispute this fact. *See* Pet. ¶ 35. In fact, DHS records indicate that, at the time of release, an immigration officer determined Petitioner "did not appear to be a threat to national security, or public safety[.]" Dkt. 6-1 at 4. Since then, Petitioner has developed ties in the community—he has applied for asylum, goes to church, and pays taxes. Pet. ¶¶ 16–17.

As such, the Government's election to "release Petitioner under § 1226(a) provided

Case No.: 1:26-cv-03533-EJD

Petitioner with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). Because Petitioner was released from DHS custody on his own recognizance in 2023, he maintains a protected liberty interest in remaining out of custody.

### 2.    Due Process

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Case No.: 1:26-cv-03533-EJD

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for nearly three years. Since then, he has lived freely in his community. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172; *Sharan S.*, 2025 WL 3167826, at *8 ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that Petitioner has no criminal convictions and has complied with all terms of his release. Respondents do not raise any facts to the contrary in opposition. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F.Supp. 3d at 1093–95. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F.Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

Case No.: 1:26-cv-03533-EJD

United States District Court
Eastern District of California

## IV.   CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.      Respondents immediately release Petitioner Chunsheng Zheng (A245-234-208) from their custody.

2.      Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3.      If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.      The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.


**IT IS SO ORDERED.**

Dated: May 14, 2026


EDWARD J. DAVILA
United States District Judge

Case No.: 1:26-cv-03533-EJD

United States District Court
Eastern District of California